# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| PAUL WHITMAN, | ) | CASE NO.: 5:20-cv-02781 |
| Plaintiff, | ) ) | JUDGE JOHN R. ADAMS |
| v. | ) ) | |
| INTERNATIONAL PAPER COMPANY, *et al.*, | ) ) ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendants. | ) ) | |

Currently pending before this Court is Plaintiff Paul Whitman's ("Whitman") motion to remand this matter to the Portage County Court of Common Pleas. (Mot. to Remand, ECF No. 5.) Defendants, International Paper Company ("International Paper") and John Cahill ("Cahill") (collectively, "Defendants") filed an opposition to Whitman's motion to remand, and Whitman filed a reply in support of his original motion. (Opp'n Mot. to Remand, ECF No. 7; Reply in Supp. Mot. to Remand, ECF No. 8.) This Court has fully reviewed the parties' submissions, and for the following reasons Whitman's motion to remand is hereby GRANTED.

I. **BACKGROUND**

On November 10, 2020, Whitman filed a complaint in the Portage County Court of Common Pleas against International Paper and Cahill alleging Whitman was wrongfully terminated from International Paper in violation of Ohio public policy and because Whitman was discriminated against due to his age, both Ohio state law claims. (*See generally* Compl., ECF No. 1-2.) On December 16, 2020, Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1441, asserting this Court possesses original jurisdiction over this action because the amount in

controversy exceeds $75,000 and there is complete diversity of citizenship of the parties pursuant to the requirements of 28 U.S.C. § 1332(a). (Notice of Removal 1-2, ECF No. 1.)

Notably, Defendants concede Cahill's inclusion in the lawsuit destroys complete diversity of citizenship given both Whitman and Cahill are citizens of Ohio. (*Id.* at 2-3.) However, Defendants argue Whitman fraudulently joined Cahill to the matter for the sole purpose of defeating complete diversity of citizenship and assert Whitman possesses no colorable claim against Cahill. (*Id.* at 3-4.) In effect, Defendants argue Whitman's fraudulent joinder of Cahill, a non-diverse defendant, cannot defeat removal of this matter based upon diversity jurisdiction. (*Id.*) *See Roof v. Bel Brands USA, Inc.*, 641 F. App'x 492, 496 (6th Cir. 2016) (citing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999); *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)) ("Fraudulent joinder of a non-diverse defendant does not defeat removal based upon diversity jurisdiction").

## II.  STANDARD OF REVIEW

For any case originally filed in state court and subsequently removed to federal court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). When a matter is removed due to diversity of citizenship, the determination of whether complete diversity of citizenship, and therefore subject matter jurisdiction, exists is made at the time of removal. *Coyne*, 183 F.3d at 492. To be clear, complete diversity of citizenship means "all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Id.* (quoting *SHR Ltd. P'ship v. Braun*, 888 F.2d 455, 456 (6th Cir. 1989) (internal quotation marks omitted). The burden to establish this Court possesses subject matter jurisdiction over this action, specifically complete

diversity of citizenship, falls upon Defendants as the removing parties. *Alexander*, 13 F.3d at 948-49 (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)).

Fraudulent joinder, as it relates to subject matter jurisdiction, "is a judicially created doctrine that provides an exception to the requirement of complete diversity" where non-diverse defendants do not "defeat removal on diversity grounds." *Coyne*, 183 F.3d at 493 (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)) (internal quotation marks omitted). Accordingly, Defendants, as the removing parties, also bear the burden of demonstrating Cahill was fraudulently joined to this matter making removal appropriate and establishing this Court possesses subject matter jurisdiction over this case. *Alexander*, 13 F.3d at 949 (citing *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 330 (6th Cir. 1989)).

### III. LAW AND ANALYSIS

To prove fraudulent joinder of a non-diverse defendant, thereby maintaining complete diversity of citizenship, "the removing party must present sufficient evidence that [] plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493. "However, if there is a colorable basis for predicting that [] plaintiff may recover against non-diverse defendants, this Court must remand the action to state court." *Id.* A claim is considered colorable "if the state law *might* impose liability on the resident defendant under the facts alleged." *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)) (internal quotation marks omitted) (*emphasis* in original). Any disputed questions of fact and any ambiguities in the controlling state law must be resolved in favor of the non-removing party. *Coyne*, 183 F.3d at 493 (citing *Alexander*, 13 F.3d at 949). Finally, "[a]ll doubts as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493 (citing *Alexander*, 13 F.3d at 949). In sum, "[t]he

combination of the 'colorable' standard with the requirement that all ambiguities of state law are to be resolved in favor of the non-removing party presents a significant hurdle" for Defendants such that they face a "particularly heavy burden" in attempting to prove Cahill was fraudulently joined. *Kent State Univ. Bd. of Trs.*, 512 F. App'x at 489.

In addressing the issue of fraudulent joinder, this Court "may 'pierce the pleading' and consider summary judgment evidence, such as affidavits presented by the parties . . .. The court may look to materials outside the pleadings for the limited purpose of determining whether there are 'undisputed facts that negate the claim.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012) (quoting *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 952-56 (6th Cir. 2011)). In considering this additional material, this Court is mindful that Whitman is afforded deference and that the threshold question before this Court is whether Whitman pled sufficient factual allegations against Cahill to establish a colorable claim under Ohio law – this is not the same as determining whether the facts actually support the claim, a question better left to the court which ultimately possesses jurisdiction over the matter. *See Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 847 (S.D. Ohio 2002) ("Given the heightened benefit of the doubt due plaintiffs in a fraudulent joinder analysis, it seems to this Court that whether a claim is 'colorable' should turn on whether there is a basis for it in law, and that whether there is a basis for it in fact is a question more appropriately left for the court which ultimately takes control of the case"). In other words, the sufficiency of Whitman's complaint is not what this Court considers because "sufficiency of the Complaint faces a higher threshold than does the establishment of a colorable cause of action under the removal statute." *Markins v. Southwest Airlines Co.*, No. 5:17 CV 793, 2017 U.S. Dist. LEXIS 148383, at *8 (N.D. Ohio Sept. 13, 2017). Amidst this fraudulent joinder landscape, this Court will address each of Whitman's claims against Cahill.

### A. Age Discrimination Claim

Whitman first claims his termination was due to discrimination against him due to his age, a violation of Ohio Revised Code § 4112.02(A):

> It shall be an unlawful discriminatory practice:
> (A) For any employer, because of the . . . age . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

At the time of Whitman's termination, August 28, 2020, Ohio Revised Code § 4112.01(A)(2) defined "employer" as "any person employing four or more persons within the state, and any person acting directly or indirectly in the interest of an employer."[1] (*See* Compl. ¶ 3, ECF No. 1-2.) It has long been law in Ohio "that individual supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment." *Genaro v. Cent. Transp.*, 84 Ohio St.3d 293, 300, 703 N.E.2d 782 (1999).

Whitman alleges that prior to his termination he "observed age related comments being made about him" such as "you are only here for [sic] next 6 years to ride out retirement" and comments regarding his "bad knees" being related to his age. (Compl. ¶ 9, ECF No. 1-2.) Although Whitman does not allege Cahill specifically made age related comments about him, Whitman alleges Defendants were partially motivated by his age to terminate his employment. (*Id.*) Accordingly, Whitman alleges Cahill, as HR Manager, personally provided Whitman with notice of his termination. (*Id.* at ¶ 8.) Although not pled out with precision, Whitman's core allegation is that Cahill was not a mere bystander to his termination, but, at the least, was an active participant

---

[1] This Court is aware that Ohio's legislature recently passed a bill amending R.C. § 4112.01(A)(2) with the intent that individuals, including supervisors, managers, and other employees, not be subject to individual liability for discriminatory employment practices precluded under R.C. § 4112. *See* 2020 Ohio HB 352. However, this bill was signed into law January 12, 2021 and became effective April 15, 2021, both dates occurring after Whitman was terminated. *See id.* Therefore, this change in law is immaterial to this Court's analysis.

playing a direct role in his termination, which occurred in violation of Ohio's anti-discrimination statute. Cahill, of course, denies his involvement in any discriminatory conduct and submitted an affidavit asserting he was merely the messenger of Whitman's termination. (Cahill Aff., ECF No. 1-4.)

It is clear there is a factual disagreement between the parties regarding the scope of Cahill's involvement in Whitman's termination. This Court, however, will not make credibility determinations and instead leave that to the ultimate trier of fact. This Court is simply called to determine whether there is a possibility that an Ohio court could impose liability on Cahill given Whitman's allegations. Although Whitman's allegations are vague, the sufficiency of the complaint is not at issue, and this Court cannot state, with the requisite degree of certainty, that Whitman is unable to state a claim of age discrimination against Cahill. Cahill does not deny involvement in Whitman's termination, where he acted directly or indirectly in the interest of International Paper. Although the scope of his involvement is to be determined, it is possible Cahill was aware of, or engaged in, discriminatory conduct which motivated terminating Whitman.

Because disputed questions of fact are resolved in Whitman's favor, all doubts are resolved in favor of remand, and Cahill has failed to meet the significantly heavy burden of establishing that no Ohio court could impose liability against him under Whitman's age discrimination claim, this Court finds remand is appropriate.

**B. Wrongful Termination in Violation of Public Policy Claim**

This analysis remains true for Whitman's claim that he was terminated in violation of Ohio's public policy. "In Ohio, the common-law doctrine of employment at will governs employment relationships." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11. An exception to this rule, however, is wrongful termination in violation of public policy,

which occurs "if an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law." *Id.* (citing *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus; *Greeley v. Miami Valley Maint. Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus).

Although the Supreme Court of Ohio has not spoken on individual liability under a claim of wrongful termination in violation of public policy, an Ohio Court of Appeals held that individual liability for wrongful termination in violation of public policy is possible, and supported by "general principles of agency and tort law." *Armstrong v. Trans-Serv. Logistics Inc.*, 5th Dist. Coshocton No. 04CA015, 2005-Ohio-2723, ¶¶ 53-62. Following this holding, other courts in this district have applied the principle that individual liability may be possible under a claim for wrongful termination in violation of public policy. *Praisler v. Ryder Integrated Logistics, Inc.*, No. 1:05 CV 1390, 2005 U.S. Dist. LEXIS 54942, at *6-8, (N.D. Ohio July 8, 2005); *Jenkins v. Ctr. Transp., Inc.*, No. 09CV525, 2010 U.S. Dist. LEXIS 7739, at *11-18 (N.D. Ohio Jan. 29, 2010); *Kunkle v. Q-Mark, Inc.*, No. 3:13-cv-82, 2013 U.S. Dist. LEXIS 91235, at *12-16 (N.D. Ohio June 28, 2013). In fact, the *Jenkins* court, in thorough analysis of *Armstrong*, concluded that the threshold question for finding individual liability was that of control – individuals "with *responsibility* for hiring or firing, who can make, prevent, or impact employment decisions" and who "'personally participate[] in the tort' of wrongful termination" can be held individually liable. *Jenkins*, 2010 U.S. Dist. LEXIS 7739, at *15 (quoting *Armstrong*, 2005-Ohio-2723, ¶ 60) (*emphasis* in original). In effect, "[a]llowing an individual supervisor who actively participates or *acquiesces* in the discharge of an employee for reporting" safety violations would defeat the

purposes of public policy. *Armstrong*, 2005-Ohio-2723, ¶ 52 (*emphasis* added). This Court will follow its sister courts.

Whitman alleges it was his responsibility to replace water quality monitoring equipment that treated wastewater for International Paper to remain compliant with Ohio's Clean Water Act. (Compl. ¶¶ 4-5, 10-12.) After Whitman replaced water quality monitoring equipment, he was terminated from International Paper. (*Id.*) Whitman claims Cahill was directly involved in his termination, which occurred in violation of Ohio's public policy, imposing individual liability upon Cahill. *See Jenkins*, 2010 U.S. Dist. LEXIS 7739, at *16 ("The essential inquiry, then, is: Did the defendant have some 'control' over the firing of the plaintiff? If the answer is yes, then the individual defendant clearly is an 'employer' who can be liable for the firing of the plaintiff").

Once again, the scope of Cahill's involvement in Whitman's termination is yet to be determined. Cahill argues he was a mere messenger for International Paper and the actual decision makers are unknown to him, while Whitman maintains Cahill's involvement goes deeper. This distinction matters little, however, as Cahill possessed some degree of control over Whitman's termination given he personally provided Whitman with the termination notice. Whether this amount of control reaches the threshold necessary to hold him personally liable for Whitman's termination is not the question before this Court. Only the trier of fact can answer that question. This Court's simple directive is to determine whether there is a possibility that an Ohio court could impose liability upon Cahill under Whitman's claim he was terminated in violation of Ohio's public policy. Once again, although Whitman's allegations are vague, the sufficiency of the complaint is not at issue, and this Court cannot state, with the requisite degree of certainty, that Whitman is unable to state a claim of wrongful termination in violation of Ohio public policy against Cahill.

Because disputed questions of fact are resolved in Whitman's favor, all doubts are resolved in favor of remand, and Cahill has failed to meet the significantly heavy burden of establishing that no Ohio court could impose liability against him under Whitman's wrongful termination in violation of Ohio public policy claim, this Court finds remand is appropriate.

## IV. CONCLUSION

For all of the foregoing reasons, this Court determines that Cahill was not fraudulently joined in this matter. Accordingly, this Court does not possess subject matter jurisdiction over this action because complete diversity of citizenship does not exist. This matter, therefore, must be remanded. Therefore, Whitman's Motion to Remand is hereby GRANTED. (Mot. to Remand, ECF No. 5.) This matter shall proceed in the Portage County Court of Common Pleas.

IT IS SO ORDERED.

DATE: June 23, 2021 /s/ John R. Adams
Judge John R. Adams
UNITED STATES DISTRICT COURT